FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

98 APR 14 PM 2: 32

U.S. DISTRICT COURT
N.D. OF ALABAMA

OUIDA FRITSCHI; and HOMEWOOD     }
CITIZENS ASSOCIATION a non-      }
profit Alabama Corporation,      }
                                 }   CIVIL ACTION NO.
     Plaintiffs                  }
                                 }   CV-97-AR-3265-S
     vs.                         }
                                 }
JAMES WARR, in his official      }
capacity as Director of the      }
Alabama Department of            }
Environmental Management; and    }
DANIEL CORPORATION,              }
                                 }
     Defendants                  }

ENTERED

APR 14 1998

## MEMORANDUM OPINION

Presently before the court are: 1) defendant James Warr's ("Warr"), motion to dismiss, pursuant to F.R.Civ.P. 12(b)(6);[1] 2) defendant Daniel Corporation's ("Daniel") motion for summary judgment; 3) plaintiffs' motion to strike some of the evidence Daniel has submitted in support of its motion for summary judgment; 4) plaintiffs' motion for leave to file their untimely motion to strike and their untimely brief in opposition to Daniels' motion for summary judgment; 5) Daniel's motion to strike plaintiffs' response to the pending motion for summary judgment, or in the alternative, motion for additional time

---

[1] As the director of the Alabama Department of Environmental Management ("ADEM"), the court will refer to Warr and ADEM collectively as ADEM, unless otherwise necessary.

1

within which to reply to plaintiffs' response; and 6) Daniel's motion to amend the court's scheduling order. Plaintiffs, Ouida Fritschi ("Fritschi") and Homewood Citizens Association, bring this action under the Federal Water Pollution Control Act ("FWPCA"), 33 U.S.C. §§ 1251 - 1387, seeking declaratory relief, injunctive relief, civil penalties and costs. For the reasons hereinafter stated, the court will: 1) dismiss the action as against Warr, with prejudice, and 2) will dismiss this action as against Daniel, without prejudice.

## I. FACTS

On June 4, 1997, plaintiffs sent defendants a notice of intent to sue.[2] (Carlisle Aff., Ex. B.) In that letter plaintiffs charged that Daniel was then violating the Clean Water Act ("CWA"),[3] § 33 U.S.C. 1365(b), by failing to adhere to an environmental control permit Daniel had obtained from ADEM for the construction of a project known as University Park, located in Homewood, Alabama on Lakeshore Drive across from Samford University. Specifically plaintiff alleged that Daniel is discharging construction site pollutants into Shades Creek. Plaintiffs also charged that ADEM had wrongfully granted

---

[2] Plaintiff's letter providing notice of intent to sue is attached to this opinion as the Court's Ex. A.

[3] The CWA is found within the FWPCA.

environmental control permits to Daniel which allow it to discharge pollutants. On December 22, 1997, more than sixty days after sending their notice of intent to sue, plaintiffs filed the pending "citizen's suit" against both defendants.

## II. RULE 12(b)(6) STANDARD

Rule 12(b)(6), F.R.Civ.P., here invoked by Warr, is effective only if a complaint "fails to state a claim upon which relief can be granted."

## III. SUMMARY JUDGMENT STANDARD

Under Rule 56(c), F.R.Civ.P., summary judgment is appropriate where "there is no genuine issue as to any material fact and...the moving party is entitled to a judgment as a matter of law."

## IV. PLAINTIFFS' MOTION TO STRIKE

Plaintiffs move to strike certain evidentiary documents Daniel submitted in support of its motion for summary judgment (See Carlisle Aff. ¶ 7; Moore Aff. at ¶ 3, 4, 5; Moore Aff., Ex. B; Moore Aff.,Ex. C). Specifically, Daniel submitted the challenged documents in support of its claim that it persistently sought information from the plaintiffs regarding the nature of their complaints about Daniels' alleged violations. Daniel

3

claims that it intended to correct any alleged violations, but that the plaintiffs refused to specify precisely what violations had allegedly occurred. Therefore, according to Daniel, plaintiffs violated their obligations under the notice provision of the CWA. See 33 U.S.C. § 1365(b); 40 C.F.R. § 135.3(a).

Because the court was able to reach its decision on the sufficiency of plaintiffs' notice of intent to sue without reference to the challenged documents, plaintiffs' motion is moot.

### V. THE CLEAN WATER ACT & ADEM REGULATIONS

The Federal Water Pollution Control Act (FWPCA), as amended, creates a comprehensive program for the restoration and maintenance of the nation's water resources. The Act seeks to achieve this goal by establishing a national pollution discharge elimination system (NPDES), which regulates the quantity and type of pollutants that a discharger, referred to as a point source, may emit into the nation's waterways, and by providing a schedule for compliance with the Act. Before discharging any pollutants into a waterway, a point source must obtain a discharge permit. The Act places primary responsibility for its enforcement, including the issuance of point source discharge permits, on the Administrator of the Environmental Protection Agency, but it also permits individual states to create their own NPDES permit systems. Upon certification by the Administrator that a state's NPDES is in accord with the Act, authority to issue permits and to enforce the terms of the Act shifts to the relevant state agency.

Alabama has adopted an NPDES system, administered by the Alabama Department of Environmental

>  Management(ADEM), which has been duly approved by the
>  EPA Administrator.

*Legal Environmental Assistance Foundation, Inc. v. Pegues*, 904 F.2d 640, 641 (11th Cir. 1990).

>  The holder of a state NPDES permit is subject to
>  both state and federal enforcement actions for failure
>  to comply with its permit.  33 U.S.C. §§ 1319,
>  1342(b)(7).  In the absence of federal or state
>  enforcement, private citizens may commence civil
>  actions under § 505 against any person alleged to be in
>  violation of an effluent [e.g., pollution] standard or
>  limitation.   33 U.S.C. § 1365(a)(1).

*City of New York v. Anglebrook Ltd. Partnership*, 891 F. Supp. 900, 901 (S.D.N.Y. 1995).  Not only are chemical wastes and sewage considered pollutants under the CWA, but dredged spoil, rock and sand are also considered pollutants.  U.S.C. § 1362(g).  Because stormwater may include rocks and sand, a "General Stormwater Permit" is often required at construction sites where rocks and sand are abundant.

The Alabama "General Stormwater Permit" requires that construction contractors maintain Best Management Practices ("BMP").  (Carlisle Aff., Ex. A, ADEM Oct. 18, 1996 letter.) BMPs contain procedures that the permit holder must implement "for the prevention and minimization of nonpoint sources of pollution in stormwater run-off...."  (Carlisle Aff., Ex. A, BMP Form.)  These procedures, which are designed and implemented by

5

engineers, often include the use of "silt fences, hay bales, check dams [and] retention ponds...." (Comensky Aff. ¶4.) Because a heavy rain may cause damage to some of these structures, the contractor must often repair the structures and adapt them to changing conditions.  Comensky Aff. ¶4.

## VI.  CLAIM FOR WRONGFUL ISSUANCE OF PERMIT

Both ADEM and Daniel contend that plaintiffs' claim against ADEM is not actionable, insofar as plaintiffs seek to challenge ADEM's issuance of the General Stormwater Permit to Daniel. Defendants' contention on this point is well taken.

Assuming that neither the Environmental Protection Agency ("EPA") nor ADEM is diligently prosecuting an action under the CWA, a citizen can maintain a citizen suit after providing proper notice to the prospective defendants.  33 U.S.C. § 1365. However, the CWA limits the circumstances under which a citizen can maintain such a suit.[4]  A citizen can bring a suit under

---

[4] 33 U.S.C. § 1365 provides in pertinent part: "any citizen may commence a civil action on his own behalf--

(1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation, or

(2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.

§ 1365 against "dischargers [including government entities] who exceed the effluent limitations encompassed in a NPDES permit, or against dischargers who fail to obtain a NPDES permit." *Legal Environmental Assistance Foundation, Inc. v. Pegues*, 717 F. Supp. 784, 787 (M.D. Ala. 1989), *aff'd* 904 F.2d 640 (11th Cir. 1990). The only other circumstance that opens the door to a citizen suit is one in which the plaintiff alleges and can prove that the EPA, not the state, has failed to perform a non-discretionary act or duty.  33 U.S.C. § 1365(a)(2).

Nowhere in the CWA is there any grant of authority to bring a citizen's suit in <u>federal court</u> against the state or its environmental agency for allegedly issuing a permit in violation of the CWA.  Plaintiffs do not allege that ADEM violated or failed to obtain a NPDES permit.  Nor do plaintiffs make any claims against the EPA directly.  Consequently, plaintiffs' claim against ADEM is not actionable in federal court, a court of limited jurisdiction.

The Eleventh Circuit, in *Legal Environmental Assistance Foundation, Inc. v. Pegues,* upheld a lower court's finding that ADEM is not a proper defendant under § 1365 of the CWA.  904 F.2d 640.  The lower court noted that it was unable to find "caselaw which would support the proposition that citizens can maintain an

7

action against State officials under this section. Nor is such a construction consistent with the words of the statute." 717 F. Supp. at 788. *Accord* Coeur *D'Alene Lake v. Kiebert*, 790 F. Supp. 998, 1008 (D. Idaho 1992); *Love v. New York State Dept. of Environmental Conservation*, 529 F. Supp. 832, 839 - 840 (S.D.N.Y 1981). Additionally,

> [i]n view of [the CWA's] enforcement provisions it cannot be assumed that Congress intended to authorize by implication additional judicial remedies for private citizens suing under ... [the] FWPCA.... "[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." In the absence of strong indicia of a contrary congressional intent, we are compelled to conclude that Congress provided precisely the remedies it considered appropriate.

*Middlesex County Sewerage Authority v. National Sea Clammers Association*, 453 U.S. 1, 14 - 15, 101 S. Ct. 2615, 2623 (1981)(citations omitted).

Despite the absence of a federal forum, citizens are not left without a remedy against a state which allegedly issues permits in violation the CWA. "[A]ny person aggrieved by an administrative action of [ADEM] shall be entitled to a hearing before the Environmental Management Commission or its designated hearing officer." Ala. Code § 22-22A-7(c) (1996). If the citizen is dissatisfied with the results of such hearing, she may seeking judicial review by "appeal[ing] to the Montgomery County

8

Circuit Court or the circuit court in which the [appellant] does business or resides...." Ala. Code § 22-22A-7(c)(6). *See Ex Parte Fowl River Protective Ass'n*, 572 So. 2d 446 (Ala. 1990) (reviewing citizen's suit challenge of ADEM issued permit). Therefore, plaintiffs here could have challenged ADEM's issuance of the permit via administrative and state judicial review. If the absence of a viable state remedy gives immediate access to the federal court, such is not the case here. Therefore, plaintiffs fail to state a claim upon which relief may be granted against ADEM, thereby making dismissal of their action pursuant to Rule 12(b)(6) as against Warr, as Director, appropriate.

### VII.  PLAINTIFFS' SUBSTANTIVELY DEFICIENT NOTICE

Daniel contends plaintiffs' notice of intent to sue is substantively deficient. Assuming that neither the EPA nor ADEM is diligently prosecuting a purported violator, a citizen suit is actionable sixty days after the citizen gives: 1) the prospective defendant, 2) the EPA, and 3) the state, notice that a citizen suit is forthcoming. 33 U.S.C. § 1365(b)(1)(A). "Notice....shall be given in such manner as the Administrator shall prescribe by regulation." 33 U.S.C. § 1365(b). The regulations provide:

> Notice regarding an alleged violation of an effluent

9

> standard or limitation or of an order with respect
> thereto, <u>shall include sufficient information to permit
> the recipient to identify</u> the <u>specific standard</u>,
> <u>limitation</u>, or <u>order</u> alleged to have been violated, <u>the
> activity alleged to constitute a violation</u>, the person
> or persons responsible for the alleged violation, the
> location of the alleged violation, <u>the date or dates of
> such violation</u>, and the full name, address, and
> telephone number of the person giving notice.... The
> notice shall state the name, address, and telephone
> number of the legal counsel, if any, representing the
> person giving the notice.

40 C.F.R. § 135.3(a),(c)(emphasis supplied).

Courts have developed two contrasting interpretations of this regulation. Some courts require that the citizen clearly <u>identify the specifics</u> of the alleged violation, such as the standard, limitation or order purportedly violated, the activity which constitutes the alleged violation and the approximate dates of the violation. *Frilling v. Village of Anna*, 924 F. Supp. 821, 832 - 34 (S.D. Ohio 1996); *California Sportfishing Protection Alliance v. City of West Sacramento*, 905 F. Supp. 792, 799 (E.D. Cal. 1995). *See Hudson Riverkeeper Fund, Inc. v. Putnam Hosp. Ctr. Inc.*, 891 F. Supp. 152, 154 (S.D.N.Y. 1995). Other courts apply a less stringent standard. These courts merely require that the citizen provide "<u>sufficient information</u>" such that the recipient can "identify the specific standard, limitation, or order alleged to have constituted a violation, the person or persons responsible for the alleged violation, the date or dates

of such violation, and the full name, address, and telephone number of the person giving notice." *Frilling*, 924 F. Supp. 832 (citing to cases that have applied the less stringent standard) (emphasis supplied).

Whichever standard a court applies, it must be mindful of the goals behind the notice requirements. First, notice gives the alleged violator "an opportunity to bring itself into compliance with the Act and thus likewise render unnecessary a citizen suit." *Atlantic States Legal Foundation, Inc. v. Tyson Foods, Inc.*, 897 F.2d 1128, 1131 (11th Cir. 1990) (citing, *Gwaltney of Smithfield, Ltd., v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 60, 108 S. Ct. 376, 382 - 83 (1987)). In addition, proper notice "allows either federal or state authorities to bring an enforcement action... thereby effectuat[ing] Congress's preference that the Act be enforced by governmental prosecution." *National Environmental Foundation v. ABC Rail Corp.*, 926 F.2d 1096, 1099 (11th Cir. 1991) (citing *Gwaltney*, 484 U.S. at 59, 60, 108 S. Ct. at 382).

In the present case, plaintiffs' notice fails both the strict approach and the less stringent interpretation of the regulation. Plaintiffs' notice was ostentatiously enigmatic. It woefully failed to provide Daniel with enough information to

allow Daniel to determine precisely how it might have been violating its stormwater permit. Instead, plaintiffs complained that Daniel had "increased turbity" by failing to "fully implement and regularly maintain" BMPs. Carlisle Aff., Ex. B. Plaintiffs also made other vague and generalized accusations in their notice of intent to sue:

> [Daniel is] in violation of the Clean Water Act because the project is in chronic violation of [its] NPDES General permit.... HCA has substantial evidence that proves the permit requirements have not been observed resulting in numerous violations of the Act....
>
> The project dumps tons of silt, mud and dirt into Shades Creek every times it rains.... Daniel is doing a very poor job of maintaining rudimentary BMP's to protect the Creek.

*Id.*

Such generalized complaints failed to provide Daniel with enough information from which it could determine what "it [was] doing wrong" and "what corrective actions [it could take to] avert a lawsuit," *Atlantic States Legal Foundation, Inc. v. Stroh Die Casting Co.*, 116 F.3d 814, 818 (7th Cir.), *aff'd cert. denied*, ___ U.S. ___, 118 S. Ct. 442 (1997), or decrease its liability for damages. For instance, what BMPs did it allegedly fail to implement and what BMPs did it fail to properly maintain? What did the plaintiffs' "substantial evidence" show? What could Daniel have done to avoid dumping the "tons of silt, mud and

12

dirt" plaintiffs allege it has dumped? *See Frilling*, 924 F. Supp. at 834 (noting that defendant was not "put on notice as to <u>which</u> permit parameters and requirements, and laws, would form the basis of Plaintiffs' lawsuit.")(emphasis supplied); *California Sportfishing*, 905 F. Supp. at 799 - 800 (noting that notice was "vague as to which portions of the permit [had] been violated" where notice provided "For the previous five years...you have violated your NPDES permit"). Furthermore, not only was Daniel unable to identify the precise basis of plaintiffs' complaint, but neither the EPA or ADEM "could fully evaluate the plaintiffs' grievances...." Therefore, these agencies "were hampered in their ability to decide upon and implement an appropriate response." *See Frilling*, 924 F. Supp. at 834. Accordingly, Daniel is entitled to summary judgment on its claim that plaintiffs' notice fails to satisfy the substantive requirements of the CWA and its regulations.

## CONCLUSION

Because plaintiffs' citizen's suit against defendant Warr is not actionable in federal court, the court finds that Warr's motion to dismiss is due to be granted. In addition, defendant Daniel is entitled to summary judgment on its claim that plaintiffs' notice of intent to sue was substantively deficient. All remaining motions are moot. The court declines to reach the

13

other issues Daniel asserts in support of its motion for summary judgment.

    A separate and appropriate order will be entered.
DONE this 14th day of April, 1998.

                                            _____
                                            WILLIAM M. ACKER, JR.
                                            UNITED STATES DISTRICT JUDGE

Slawson, Esq.

WPEB

EAN/labete

U.S. EPA REGION
REGI[...]

97 JUN 16 PM 12: 17

RECEIVED

Wednesday, June 04, 1997

Mr. Kent Graeve, Senior Vice President
Mr. Charles Carlisle, Senior Vice President
Daniel Corporation
1200 Corporate Drive, P.O. Box 385001
Birmingham, Alabama 35242-2940

Mr. James W. Warr, Director
Alabama Department of Environmental Management
1751 Congressman W.L. Dickinson Drive
Montgomery, Alabama 36109

RE: NOTICE OF INTENT TO SUE, Certified Mail Item No. P 226 104 243 and No. Z 371 692 772

The University Park Project, operated and permitted by the Daniel Corporation in the City of Homewood, Alabama, and the Alabama Department of Environmental Management are in Violation of the Federal Water Pollution Control Act [also known as the Clean Water Act], NPDES General Permit ALG610000, Authorization ALR 102783 Sixty Day Notice of Intent to Sue

Dear Gentlemen:

A. Section 505(b) of the Clean Water Act, 33 U.S.C. Section 1365(b) (the "Act"), requires that sixty (60) days prior to the filing of a citizen's suit in United States District Court under the sections of the Act in question, the alleged violators, the Daniel Corporation and the Alabama Department of Environmental Management [ADEM], the agency administering the Act for the state in which the alleged violations occur, be given notice of alleged violations.

B. The Homewood Citizens Association and its President, Ms. Ouida Fritschi, [hereinafter "HCA"] an unincorporated association of homeowners in Homewood, Alabama, having been in existence for more than 20 years, hereby place you on notice, pursuant to Section 505(b) of the Clean Water Act, 33 U.S.C. Section 1365(b), that they believe the University Park Project [hereinafter "The Project"], the developer of the proposed development and the property owners and lease and permit holders, are in violation of the Clean Water Act because the project is in chronic violation of NPDES General Permit ALG610000, Authorization ALR 102783. The chronic violations include but are not limited to the fact that the Project has consistently failed to fully implement and regularly maintain the required Best Management Practices [BMP] Plan as defined in and required under the general permit in question. Even though Mr. Graeve signed the permit application swearing under penalty of perjury that he was aware of the BMP requirements and his obligation to follow them, HCA has substantial evidence that proves the permit requirements have not been observed resulting in numerous violations of the Act.



"Working to Preserve the
Environment for More Than
Ten Years"

The 1776 Building
1776 Independence Court
Suite 303
Birmingham, Alabama 35216
205 870-1997
205 879-0827 fx

Exhibit A.

Page 1

SENT BY CERTIFIED MAIL Item No. P226 104 242 and No. Z 371 692 712 The University Park Project, operated and permitted by the Daniel Corporation in the City of Homewood, Alabama, and the Alabama Department of Environmental Management are in Violation of the Federal Water Pollution Control Act [also known as the Clean Water Act], NPDES General Permit ALG610000, Authorization ALR 102783, Sixty Day Notice of Intent to Sue.

    C. Runoff from the Project construction site has and will continue to enter Shades Creek, which runs past the property of the members of HCA, and runs through the City of Homewood constituting a nuisance and a trespass. This is also a violation of Section 301 of the Clean Water Act, 33 U.S.C. Section 1311. The HCA hereby places you on notice of its intent to sue you for these violations, as required by Section 505(b) of the Clean Water Act, 33 U.S.C. Section 1365(b).

    D. Notice is hereby given pursuant to the Act that the HCA will commence a civil enforcement action against Daniel and ADEM for violations of standards, regulations and requirements which have become effective pursuant to the Act. [40 C.F.R. Section 124.4 et.seq. and other sections] The violations, to the best of our knowledge and belief, include the following:

    1. The granting of an Authorization to Discharge, under NPDES General Permit ALG61000, Construction and Land Disturbance, Authorization ALR 102783, University Park, Jefferson County, was illegally granted because under 40 CFR 122.4 "No permit (under a State NPDES program) may be issued: (a) When the conditions of the permit do not provide for compliance with the applicable requirements of the CWA [Act] or regulations promulgated under the CWA";

    2. The granting of an Authorization to Discharge, under NPDES General Permit ALG61000, Construction and Land Disturbance, Authorization ALR 102783, University Park, Jefferson County, was illegally granted because under 40 CFR 122.4 "No permit (under a State NPDES program) may be issued: (i) To a new source or a new discharger, if the discharge from its construction or operation will cause or contribute to the violation of water quality standards. The owner or operator of a new source or a new discharger proposing to discharge into a water segment which does not meet the applicable water quality standards or is not expected to meet those standards even after the application of effluent limitations required by section 301(b)(1)(A) and 301(b)(1)(B) of CWA, and for which the State or interstate agency has performed a pollutants load allocation for the pollutant to be discharged, must demonstrate, before the close of the public comment period that: (1) There are sufficient remaining pollutant load allocations to allow for the discharge; and (2) The existing dischargers into that segment are subject to compliance schedules designed to bring the segment into compliance with applicable water quality standards.

    E. The project dumps tons of silt, mud and dirt into Shades Creek every time it rains. Shades Creek is classified on ADEM's CWA 1996 303(d) list as a water in "non-support" status from the Cahaba River to its source, its entire 55 mile length. That means that the Project is discharging into a water segment that has already been identified by ADEM as a segment that is so polluted it does not meet its water quality classification standard which is "aquatic fish and wildlife". ADEM's 303[d] list documents "siltation, habitat alteration, and turbidity" as the causes of the pollution and chronically impaired status and writes that this pollution comes from "storm sewer runoff, removal of riparian vegetation, stream bank modification, land

Page 2

NOTICE TO SUE. Certified Mail Item No. P 226 104 243 and No. Z 371 6__ 772, The University Park Project, [constructed] and permitted by the Daniel Corporation in the City of Homewood, Alabama, and the Alabama Department of Environmental Management, are in Violation of the Federal Water Pollution Control Act [also known as the Clean Water Act], NPDES General Permit ALG610000, Authorization ALR 102783, Sixty Day Notice of Intent to Sue.

development and construction." In spite of this documentation that Shades Creek is overloaded with these pollutants, ADEM issued Daniel authorization to discharge more of the very same pollutants into Shades Creek. Daniel is doing a very poor of job of maintaining rudimentary BMPs to protect the Creek. In spite of this over polluted condition of Shades Creek, Daniel Corporation is conducting and plans to conduct "removal of riparian vegetation, stream bank modification, land development and construction" operations, the very same activities ADEM documents is the cause of the over polluted status of Shades Creek. This is not permitted under federal law and is the reason for the suit. In addition, the Project as proposed will not protect water quality, will cause further unpermitted discharge of pollutants into a navigable waterway of the United States [Shades Creek], and will violate the requirements of the National Pollutant Discharge Elimination System [NPDES].

F. The maximum fine or penalty, not including attorneys fees and costs, a judge could levy against you if this case goes to trial or to summary judgment and you are found guilty would be computed at $25,000.00 (Twenty Five Thousand Dollars) per violation per day. Plaintiff's position is if construction and operation proceed, the alleged violators listed above could accrue penalties of $75,000.00 per day. Total penalties that could be assessed in this case are estimated to run as high as $7,000,000.00. [Seven Million Dollars.] The Act in question also allows the plaintiff to recover reasonable attorneys fees from the violator if the Plaintiff prevails.

G. Research indicates that the Project remains out of compliance at this writing and that ADEM is not taking action sufficient to protect water quality or to deny or revoke the permit in question. We believe this NOTICE OF INTENT TO SUE sufficiently states the grounds for the complaint. If, however, you have any questions or wish to discuss the matter, please contact Byron Bart Slawson at the number listed above.

Sincerely,

Byron Bart Slawson
Slawson, Esq. P.C.
Attorney for the Plaintiffs
The 1776 Building
1776 Independence Court
Suite 303
Birmingham, Alabama 35216
(205) 870-1997

BS/sb

...NTENT TO SUE, Certified Mail Item No. P 226 104 243 and No. Z 371 692 772, The University Park Project, operated and permitted by the Daniel Corporation in the City of Homewood, Alabama, and the Alabama Department of Environmental Management are in Violation of the Federal Water Pollution Control Act [also known as the Clean Water Act], NPDES General Permit ALG610000, Authorization ALR 102783, Sixty Day Notice of Intent to Sue.

cc: clients and co-counsel

Dr. Thomas Corts, President
Samford University
800 Lakeshore Drive
Birmingham, Alabama 35209
Certified Item # Z 120 731 020

Mayor Barry McCulley
Homewood City Hall
Homewood, Alabama 35209
Certified Item #Z 120 731 021

Ms. Carol Browner, Administrator
U.S. Environmental Protection Agency
401 M Street, S.W.
Washington, D.C. 20460
Certified Item #Z 120 731 022

Mr. John H. Hankinson, Jr.
Regional Administrator
U.S. Environmental Protection Agency
Region IV
345 Courtland St., N.E.
Atlanta, Ga. 30365
Certified Item #Z 120 731 023

Mr. James Warr, Director
Alabama Department of
Environmental Management
1751 Cong. W.L. Dickinson Drive
Montgomery, Al. 36130
Certified Item #Z 371 692 772

Ms. Carolyn Privett
United States Attorney
Northern District of Alabama
200 Robert S. Vance Federal Building
1800 Fifth Avenue North
Birmingham Alabama 35203
Certified Item #Z 371 692 773

Page 4

NOTICE OF INTENT TO SUE, Certified Mail Item No. P 226 104 243 and No. Z 371 692 772. The University Park Project, operated and permitted by the Daniel Corporation in the City of Homewood, Alabama, and the Alabama Department of Environmental Management are in Violation of the Federal Water Pollution Control Act (also known as the Clean Water Act), NPDES General Permit ALG610000, Authorization ALR 102783, Sixty Day Notice of Intent to Sue.

Ms. Janet Reno
Attorney General of the United States
Department of Justice
10th Street and Constitution Avenue, N.W.
Washington, D.C. 20530
Certified Item #Z 371 692 774